**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DANA JO BAKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 08-CV-176-TLW |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Plaintiff Dana Jo Baker seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 20].

Plaintiff's applications for disability insurance benefits and supplemental security income were filed on November 28, 2003, alleging an onset date of December 15, 2002. [R. 83,196]. Plaintiff's counsel amended her onset date to be September 4, 2003. [R. 40]. The relevant adjudicated period is from September 4, 2003 through February 23, 2007. [R. 20-28, 40]. This is plaintiff's second application for benefits. She filed a prior application on February 23, 2000, which was denied initially. Plaintiff took no further action in that case. [R. 40].

The ALJ conducted a hearing in the instant case on November 6, 2006. [R. 35]. By decision dated February 23, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 15]. The Appeals Council denied review on January 15, 2008. [R. 5]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§

404.981, 416.1481. On March 31, 2008, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.§ 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an

Case 4:08-cv-00176-tlw   Document 30 Filed in USDC ND/OK on 08/12/10   Page 3 of 12

individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

On appeal, plaintiff asserts the ALJ failed to adequately evaluate plaintiff's mental health and failed to properly develop the record. [Dkt. # 27 at 4].

## **Background**

Plaintiff was born on December 15, 1969 and was 36 years old when she appeared before the ALJ. [R. 42]. She completed her sophomore year in high school and married at age 16. [R.43, 134]. Her marriage lasted eleven years. Plaintiff is currently remarried. She has three children with her second husband, ages two, six and seven. [R. 43, 135]. Plaintiff previous lived in Texas before moving to Tulsa. [R. 95-99]. She has a 17-year work history in Texas, with employment including manager, assistant manager, and clerk for various convenience stores (1988 to 2002) and as a data entry clerk for a tele-communications company (2001 to 2002). [R. 95-99, 102]. Plaintiff testified she quit working in 2002, because she could not handle herself or the stress of working. [R. 44]. In her application forms, plaintiff claimed she stopped working because she moved and could not get to work on time. [R. 117]. When plaintiff moved to Tulsa, she made no attempt to return to work. [R. 44]. Plaintiff claims she is incapable of working because she has a fear of public places and she has a weak right wrist. [R. 45-46]. At the hearing, plaintiff's attorney entered the following stipulation of record:

> Physically there isn't anything that would prevent this woman from sitting six hours out of an eight-hour day or standing an eight-hour day. I also agree with the DDS's determination that the Claimant is going to have limited use with handling and grasping with the right hand and limited use in the ability to push and pull with the right hand when that pushing and pulling involves grasping or handling. And as far

3

  as the physical ability to sit, stand, and walk, I just will reiterate the limitations that
  she gave doesn't, isn't a physical limitation. It's the mental limitation.

[R. 62]. Plaintiff claims her disabilities are bipolar disorder, post traumatic stress disorder, and borderline personality traits. [Dkt. # 27 at 3-4]. Plaintiff received counseling and prescription medication at Family and Children Services, from April 2005 to August 30, 2007. [R. 3, 171- 269]. The therapist's notes indicate that family stressors, such as three young hyperactive children and an emotionally unsupportive husband, are a contributing factor to plaintiff's mood disorder, anxiety, depression and social isolation. [R. 172, 191, 194-195, 219, 221-222, 234-235, 243, 250].

  The ALJ found that plaintiff has not engaged in gainful activity since September 4, 2003. He determined her severe impairments to be bipolar disorder, social phobia and right carpal tunnel syndrome. [R. 22]. He found that plaintiff's impairments, in combination, did not meet or medically equal the listed impairments, specifically listing 12.04 (Affective Disorders). [R. 23]. The ALJ determined plaintiff had the RFC to lift or carry 10 pounds frequently, and 20 pounds occasionally; stand, walk and/or sit 6-hours in an 8-hour work day; but she could not grasp tools with the right hand or perform work that required understanding, remembering and carrying out detailed job instructions. Id. He determined she has mild restrictions in daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence or pace, and no episodes of decompensation. Id.

  The ALJ found plaintiff's testimony less than credible regarding limitations in her daily activities and mental functioning. [R. 24-25]. The ALJ determined that plaintiff is capable of returning to her past work as a cashier, fast food manager and data entry worker. [R. 26]. In the alternative, based on his findings and the testimony of the vocational expert, the ALJ concluded that

plaintiff was capable of performing unskilled light and sedentary occupational work, and that job opportunities in those fields exist in significant numbers in the regional and national economy. Thus, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. This finding was made at step four, and alternatively, at step five in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

**Discussion**

As her first assignment of error, plaintiff contends her mental health was not adequately evaluated because: (1) the ALJ failed to match his findings with the medical definitions for her mental disorders, (2) the ALJ did not give controlling weight to the opinion of plaintiff's treating therapist, and (3) contrary to the ALJ's findings, the vocational expert testified that plaintiff could not return to her past relevant work. [Dkt. # 27 at 5-10].

In evaluating plaintiff's mental functioning, the ALJ first considered the history of plaintiff's mental health treatment. He determined her treatment history was limited and sporadic.

> Although the claimant alleges disability from September 4, 2003, there is no medical evidence prior to a consultative examination on February 4, 2004. At that time, the claimant stated that she was not taking any medication and had not had any mental health treatment in quite some time. (Exhibit 1F, page 1). Mental status examination showed no marked limitations in concentration, persistence, or pace. (Exhibit 1F). There is no further evidence regarding mental health treatment until January 6, 2006 (Exhibit 6F, page 26).

[R. 25]. The ALJ noted plaintiff's daily routine focused on caring for her three active and

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

demanding young children.

> She stated that she had three children, ages 2, 6, and 7. In her supplemental disability report . . . the claimant stated that she got up with her kids, got them something to eat, did housework and picking up, and spent most her time "chasing my kids." She further stated that she fixed every meal for everybody and that it took about 2 hours to cook dinner. The claimant stated she did all the household maintenance including cleaning the house and doing laundry. She stated that she went grocery shopping once a month for about 4 hours. The claimant stated that she did not read, watch much television, or have hobbies because she did not have time and "my kids won't let me." She stated that she slept 6-7 hours a night and the only problem she had sleeping was "my kids wake up" (Exhibit 2E). On January 6, 2006, the claimant stated that she had no breaks from her kids and was home with them all the time (Exhibit 6F, page 26). The claimant also testified that when she has a bad day her husband will take off work and stay home; however, on February 20, 2006, she stated that she had no ride to therapy because her husband was at work all day (Exhibit 6F, page 24). On June 6, 2006, it was noted that the claimant was unable to let anyone help her with the household responsibilities due to her compulsiveness (Exhibit 6F, page 6).

[R. 25]. The ALJ noted that when plaintiff complied with the treatment plan for her bipolar disorder, the medications stablized her condition with no adverse side effects.

> The claimant testified that she took medication for her bipolar disorder, had no side effects from that medication, and that it helped her condition. On June 6, 2006, the claimant stated that since her medication had been changed, her mood had been much more stable and she had increased ability to concentrate (Exhibit 6F, pages 9 and 13).

[R. 25]. The ALJ found that plaintiff ended her 17-year work history for reasons other than mental health issues.

> On November 28, 2003, the claimant stated that she stopped working because she moved and could not get there on time (Exhibit 3E, page 2). On February 4, 2004, the claimant told Dr. Spray that she stopped working because she was "moving up here" (Exhibit 1F, page 1.)

[R. 25]. The ALJ noted that plaintiff's treating physician did not place any functional restrictions on her activities that would preclude light work activity with certain specified restrictions. [R. 25].

Thus, the Court concludes that the ALJ relied on substantial evidence to support his decision.

The Court finds no merit in plaintiff's claim that the ALJ failed to match his findings with the medical definitions for plaintiff's mental disorders. The ultimate decision of whether a plaintiff is disabled is reserved to the ALJ. Castellano v. Secretary of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ is to make his determination by applying the five-step sequential process for evaluating disability. Harris v. Secretary of Health and Human Services, 821 F.2d 541, 543 (10th Cir 1987). At step three, the ALJ is to determine whether the plaintiff's severe impairment is the same as or medically equivalent to an impairment described in the "Listing of Impairments," 20 C.F.R., Subpt. P. App. 1. If a listing is satisfied, she would be disabled per se. Id. A per se disability is not based on the medical definition but rather on the regulations. It would be error for the ALJ to make his determination based on the medical definition of the impairment rather than applying the regulations that guide disability insurance determinations. In this instance, the ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal any one of the listings, specifically, listing 12.04 (Affective Disorders). The ALJ found that plaintiff was not per se disabled. Thus, the Court finds that the ALJ applied the correct legal standard in making his determination.

Plaintiff contends the ALJ failed to give controlling weight to the Medical Source Statement of plaintiff's treating physician, Dr. Terri Stonehocker, and failed to enter findings justifying his rejection of Dr. Stonehocker's opinion. The ALJ rendered his decision denying plaintiff's claim for benefits on February 23, 2007. [R. 20]. Seven months later, plaintiff's counsel submitted to the Appeals Council a Medical Source Statement from Dr. Stonehocker dated September 6, 2007, which was received by the Appeals Council on January 15, 2008. [R. 9]. The Appeals Council took this evidence into consideration in affirming the decision of the ALJ and in denying plaintiff relief. It

held:

> We also considered Dr. Stonehocker's statement dated September 6, 2007. . . .
>
> The evidence indicates you saw Dr. Stonehocker for the first time in August 2007. Dr. Stonehocker reported you are markedly limited in several functioning areas; however this statement is not consistent with the other psychiatric and counselor treatment records with indicated stability by December 2006 with no deterioration of your functioning ability through September 2007.

[R. 6]. The duty of the Appeals Council is defined under 20 C.F.R. §§ 404.970(b), 416.1470(b), which provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Id. § 404.970(b). Dr.Stonehocker completed her assessment seven months after the close of the adjudicated period in this case. It was submitted to the Appeals Council after the ALJ rendered his decision on February 23, 2007. [R. 22]. Dr. Stonehocker checked that she was providing a "Current Evaluation." [R. 270]. Thus, because Dr. Stonehocker's assessment did not relate to the period "on or before" the date of the administrative law judge's decision, and because the Appeals Council found that it did not modified the results of the ALJ's decision, the ALJ did not err in failing to give Dr. Stonehocker's opinion controlling weight or provide an explanation for his decision in that regard.

Plaintiff claims the ALJ wrongfully interpreted the opinion of the vocational expert in his determination that plaintiff could return to her past relevant work as a cashier, fast food manager, and data entry worker. The vocational expert testified that plaintiff could perform the light

8

exertional job functions of telemarketing and check cashing, considering her mental impairments and the physical restriction regarding her right wrist. The vocational expert ("V.E.") testified:

> V.E.   Yes. Now Judge, the telemarketing and check cashing you would use the hands. You would not have to have strong grip, but you would use the hands in both on a frequent basis.
>
> ALJ:   And those would be the same skill level, same - -
>
> V.E.   SVP of 3
>
> ALJ:   - - exertional level?
>
> V.E.   Yes, sir. Would you want some figures?
>
> ALJ:   Please
>
> V.E.   On the check cashier, it is 450 in the region, which is Oklahoma, 55,000 in the U.S. Telemarketing is 1, 200 in Oklahoma, 80,000 in the U.S.

[R. 69]. Plaintiff is correct that the V.E. testified that due to the limitations of plaintiff's right wrist "she would have trouble doing her past work" as a fast food manager. [R. 66-67]. However, this misstatement is harmless error, because the ALJ made an alternative determination at step 5. [R. 26-27]. At step five the burden of proof shifts to the Commissioner. A court must affirm the Commissioner's final decision if either the step four or step five disposition is supported by substantial evidence and applies the correct legal standard. See Berna v. Chater, 101 F.3d 631, 633-34 (10th Cir. 1996). Plaintiff does not challenge the ALJ's step five determination. At step five, the ALJ found that based on plaintiff's age, education, work experience, RFC and the opinion of the vocational expert, plaintiff is capable of performing unskilled light occupations such as arcade attendant, and self service cashier; and unskilled sedentary occupations such as food order clerk, and escort driver. The Court finds that this unchallenged determination is supported by substantial

evidence.

As her second assignment of error, plaintiff claims the ALJ failed to properly develop the record. The Court disagrees. "In a social security disability case, the claimant bears the burden to prove her disability." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009). Although an ALJ has a duty to develop the record, the duty is not unqualified. The ALJ need only develop the record "consistent with the issues raised." Id. at 1063, (citing Henrie v. U.S. Dep't of Health & Human Serv., 13 F.3d 359, 360-61 (10th Cir. 1993)). At the hearing, plaintiff counsel, Mr. Charles Mulvey, advised the ALJ that he was plaintiff's third appointed representative and that her two previous appointed attorneys did not obtain any medical records. Mr. Mulvey stated that plaintiff had received "treatment for some time at a low-cost mental facility" and that he had difficulty obtaining those medical records. But that he had "already talked to them" and the records "are going to be forthcoming fairly quickly." [R. 38]. Mr. Mulvey reported that the hearing record only contained two consultative examinations. [R. 37-38]. The ALJ accommodated Mr. Mulvey's request to supplement the record.

> ALJ: And I'll show your request to submit medical evidence after this hearing will be granted, and how much time do you need to get that together?
>
> Atty: I will – I know with 100 percent certainty I'll have them by the end of the month.
>
> ALJ: Thirty days?
>
> Atty: Thirty I think would be more than sufficient, and if I have them earlier than I expect to, I will submit then as soon as they are received.

[R. 41]. The record includes a cover letter dated January 18, 2007, from Mr. Mulvey to the ALJ with attached medical records from Family & Children Services, consisting of Chart Notes dated January

6, 2006 through November 21, 2006. [R. 169-195]. Plaintiff's counsel advised the ALJ that with receipt of these supplemental medical records: "The record can be closed and transferred to decision writing." [R. 169]. As previously stated, the ALJ thereafter entered his decision on February 23, 2007. [R. 28]. Following the ALJ's denial of her disability claim, the Appeals Council granted leave for plaintiff to submit additional medical records maintained by Family & Children Services, these records are dated April 26, 2005 through August 30, 2007. The Appeals Council reviewed those records in conjunction with the entire record and held:

> We considered the additional evidence from Family and Children's Services dated April 26, 2005 through August 30, 2007... The additional evidence documented that you received treatment in 2005. You told your counselor that you were unable to work because of a lack of childcare for your children. The evidence does not document any significant worsening of your condition.

[R. 6]. Plaintiff claims the ALJ erred in failing to obtain her medical records from Dr. Paul Hampton, Baylor Hospital, Dr. Michael Cunningham, Ph.D., and Mary Mulcahy for treatment received from 1996 through November 2002. [Dkt. # 27 at 10]. As previously stated, the relevant adjudicated period in this case is from September 4, 2003 (the alleged onset date) through February 23, 2007 (the decision date). Thus, the subject records would be irrelevant to the merits of this case. Accordingly, the ALJ did not err in failing to obtain the subject records.

Moreover, the record shows that the ALJ allowed plaintiff's counsel to conduct direct examination; therefore, it was her counsel's obligation to direct his questions to plaintiff's purported mental limitations. "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Cowans v. Apfel, 202 F.3d 281 (10th Cir. 1999) (citing Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Further, the ALJ took necessary steps to assure that the record was properly developed for his review. At the beginning of the hearing, the ALJ inquired of plaintiff's counsel whether the record was fully developed and complete. [R. 310]. He allowed plaintiff's counsel to supplement the record and held the record open until such time as he was advised that the record was complete. The ALJ gave counsel the opportunity to make an opening statement, conduct direct examination, question the vocational expert and make a closing statement. Thus, the undersigned finds that the ALJ complied with his obligation to develop the record.

### Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 12th day of August, 2010.

_____
T. Lane Wilson
United States Magistrate Judge